## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                        **Case No. 04-40168-02/03-RDR**

JEFF BARNHART and
MARLON CARROLL,

        Defendants.

_____

## MEMORANDUM AND ORDER

Defendants Jeff Barnhart and Marlon Carroll are before the court upon a ten-count indictment which alleges, in general, a conspiracy to manufacture and distribute methamphetamine. There is a third defendant in this case, Rebecca Barnhart, who has not appeared. This case is now before the court upon the pretrial motions of Jeff Barnhart and Marlon Carroll. The court has conducted an evidentiary hearing upon defendants' motions to dismiss and defendant Carroll's motion to suppress and is prepared to rule. The court shall also issue rulings upon other motions which have not required evidence or argument.

I.  PENDING MOTIONS WHICH DID NOT REQUIRE ARGUMENT OR EVIDENCE

     Motions to join (Doc. Nos. 28 and 36)

These motions shall be granted to the extent that defendants Barnhart and Carroll have standing to bring the motions they seek to join.

Motion for discovery and notice (Doc. No. 27)

The court shall direct that the government give defendants the notice required under Rules 404(b), 609 and 807, seven days prior to the trial date of this case.

Motion to disclose expert testimony (Doc. No. 29)

The motion shall be considered moot on the basis of the disclosure filed by the government.

Motion to sever defendants (Doc. No. 32)

The court shall take this motion under advisement.  The key evidence as to this motion appears to be a statement from defendant Jeff Barnhart.  The government is directed to submit that statement to the court with proposed redactions.  The court will decide the motion to sever after considering the statement and the proposed redactions.

Motion for notice of co-conspirator statements (Doc. No. 31)  This motion shall be considered moot.

II.  DEFENDANT CARROLL'S AND DEFENDANT JEFF BARNHART'S MOTIONS TO DISMISS (Doc. Nos. 34 and 35)

Related proceedings

There is a somewhat complicated multi-jurisdictional history which shall be summarized as a background to the motions to dismiss.

The counts of this federal indictment involve conduct from November 10, 2001 through February 11, 2003.  The indictment

2

alleges that defendants were involved in a methamphetamine manufacturing and distribution operation in Northeast Kansas. It is alleged that the methamphetamine was made in Brown County, Kansas at or around a trucking company location.  It is further alleged that the precursor chemicals were purchased and the final product was distributed in the surrounding area, including Doniphan County, Kansas and Buchanan County, Missouri.

Charges against defendant Carroll were brought previously in  Buchanan County, Missouri; Brown County, Kansas; and Doniphan County, Kansas.  The charges in Doniphan County were dismissed because charges were filed in Brown County.  The charges in Brown County were dismissed on December 6, 2004 in anticipation of the federal charges filed herein on December 29, 2004.

The Buchanan County, Missouri case against defendant Carroll arose from the purchase of precursor chemicals in St. Joseph, Missouri.  The case resulted in a plea of guilty on May 24, 2004.  Defendant Carroll was sentenced to probation by the Missouri court in July 2004.  Defendant Carroll had spent several months in jail pending trial and sentence prior to receiving probation.

Charges against Jeff Barnhart in this matter were brought in Brown County on April 17, 2003.  A plea agreement was reached

on November 26, 2003.  The agreement anticipated a sentence of 72 months.  This was the sentence, but defendant appealed.  The government asserts that the appeal violated the plea agreement. The appeal sought to take advantage of a recent holding with regard to sentencing of methamphetamine crimes in Kansas state courts.  See <u>State v. McAdam</u>, 83 P.3d 161 (Kan. Jan. 30, 2004). The appeal was filed February 19, 2004.  Defendant Barnhart prevailed upon his appeal and the case was remanded.  Defendant Barnhart was indicted in this case on December 29, 2004.  His state case in Brown County was dismissed on January 19, 2005.

<u>Defendant Carroll's motion to dismiss</u> (Doc. No. 34)

Defendant Carroll raises several arguments for dismissal on the basis of the multiple prosecutions he has faced in this matter.  The court heard testimony from:  Kevin Hill, the Brown County Attorney; Dawn Williams, the former assistant prosecutor for Buchanan County, Missouri; Jeff Stevens, counsel for Marlon Carroll in Buchanan County; and Steven Maxwell, an attorney for the State of Kansas Attorney General's Office and Special Assistant United States Attorney for the District of Kansas assigned to the prosecution of the case at bar.  From this testimony and the exhibits admitted, the court makes the following factual findings.  Prior to February 11, 2003, Kevin Hill and Brown County law enforcement had been

4

investigating an alleged methamphetamine manufacturing and distribution operation involving members of the Barnhart family and others in Brown County, Kansas and the surrounding area. It was a major investigation in Hill's opinion. On February 11, 2003, the investigation reached a turning point when persons allegedly involved in the methamphetamine operation were detected buying and/or shoplifting precursor materials in St. Joseph, Missouri. These persons were pursued across the state line and arrested in Doniphan County, Kansas. One of these persons was defendant Marlon Carroll. Charges were filed in Doniphan County, Kansas. But, these charges were dropped shortly after charges were brought in Brown County and Buchanan County, Missouri.

During the investigation of the case, Kevin Hill asked for help from the Kansas Attorney General's Office. Steven Maxwell, an attorney in that office, was assigned to assist Hill. Maxwell helped to draft the second amended complaint that was filed in the Brown County case. He swore to it and signed it. He was also involved in a preliminary hearing and in plea negotiations.

Plea negotiations regarding the Brown County charges against Marlon Carroll involved Kevin Hill and Steve Maxwell. They were willing to recommend a sentence of 96 months for Carroll in

return for a plea of guilty, debriefing, and cooperation against other defendants. Carroll did not accept this offer. Negotiations with Carroll in Kansas and Missouri had the goal of wrapping up both cases. Carroll faced the possibility of a lengthy sentence in Missouri. If he was certified by the Buchanan County prosecutor as a prior persistent felon, his sentence there could have been enhanced to twenty years.

Maxwell was appointed as a Special Assistant United States Attorney on January 24, 2004. Maxwell's connection with the case ceased for a time in April 2004 because he was deployed to Iraq. He was not available for consultation while in Iraq.

On January 30, 2004, the Kansas Supreme Court issued its opinion in <u>State v. McAdam</u>, 83 P.3d 161 (Kan. 2004). This opinion held that persons convicted of methamphetamine crimes in Kansas could be sentenced only under a lesser penalty provision of the Kansas statutes. This significantly reduced the possible sentence which Carroll might receive in Kansas state court.

On May 24, 2004, an oral plea agreement was reached between Carroll and the Buchanan County prosecutor, Dawn Williams. This was an "open" plea agreement, meaning that no specific length of sentence was recommended or expected. At the hearing where Carroll pleaded guilty, Williams stated that she:

> "had spoke to Kevin Hill . . . [and that] it was my
> understanding from Doniphan County and that area in

Kansas that they had no interest in pursuing Mr.
Carroll for a variety of reasons.  That if he were to
enter a plea of guilty in this jurisdiction to the
conspiracy that they were not going to pursue anything
in their jurisdiction.  And I say that on the record
for   Mr.   Carroll's   benefit   because   that   was
communicated to me."

At the July 1, 2004 sentencing hearing in Buchanan County,
Carroll asked for probation; the prosecutor asked for a four-
year sentence.  The judge, following the recommendation of the
presentence report, sentenced Carroll to probation.

When Kevin Hill learned that Carroll was sentenced to
probation in Missouri, he was upset.  Carroll's sentence was
significantly less than what was received by other members of
the alleged methamphetamine operation who did not cooperate with
the prosecution.  Hill decided to require Carroll to return to
Brown County for prosecution upon the complaint filed there.

After Carroll was returned to Kansas, the prosecution of the
Brown County charges continued.  However, these charges were
dismissed on December 6, 2004 in anticipation that federal
charges would be brought against Carroll.  By this time, Steven
Maxwell had returned to Kansas from Iraq.  Currently, he is
helping lead the prosecution of the federal charges on behalf of
the United States.  The greater penalties under federal law were
the motivation for bringing federal charges against Carroll.

There is a dispute between Dawn Williams, Kevin Hill and

Steven Maxwell regarding the substance of conversations they had about Marlon Carroll.  Williams testified that she understood from Hill that Kansas authorities would not be interested in prosecuting Carroll if he pleaded guilty and was sentenced in Missouri.  She also testified that Maxwell told her that Carroll would not be prosecuted federally.  Hill testified that he gave Williams no authority to bind the State of Kansas and that he told Williams only that he doubted the Kansas prosecution of Carroll would be pursued if Carroll received a lengthy sentence. Maxwell denied that he told Williams that Carroll would not be prosecuted federally.   It is undisputed among the various witnesses, including Carroll's attorney in Missouri, that no one told or promised Carroll that he would not be prosecuted federally.

Defendant Carroll's first argument in his motion to dismiss is that this court should honor and enforce the terms of the Missouri plea agreement by dismissing this prosecution. Defendant Carroll contends that the understanding he had of the plea agreement was that he would not be prosecuted in Kansas and that this federal prosecution breaches that agreement. Defendant Carroll cites that well-established principle that plea agreements are to be construed according to contract principles.  U.S. v. Cooper, 70 F.3d 563, 565 (10th Cir. 1995).

8

The evidence in this case, however, is that no one promised defendant Carroll that he would not be prosecuted federally. Hence, there is no evidentiary basis for a claim that the plea agreement contained an understanding that federal charges would not be brought.  Moreover, the law is clear that the federal government is not bound by the terms of a state court plea agreement.  See Hendrix v. Norris, 81 F.3d 805, 807 (8th Cir. 1996); U.S. v. Cordova-Perez, 65 F.3d 1552, 1554 (9th Cir. 1995) cert. denied, 519 U.S. 838 (1996); U.S. v. Allen, 930 F.2d 1270, 1274 (7th Cir. 1991); U.S. v. Roberson, 872 F.2d 597, 611 (5th Cir.) cert. denied, 493 U.S. 861 (1989).  It may be asserted that Maxwell's designation as a Special Assistant United States Attorney is evidence of the federal government's involvement in the Missouri plea agreement.  But, Maxwell was in Iraq at the time the plea agreement was reached in Missouri.  He was not a party to the plea discussions in Missouri or the conversations between the prosecutors in Missouri and Kansas at and around the time of the plea agreement.  At that time, the decision to bring federal charges had not been made and would not be made for several months.  To reiterate, the evidence is clear from defendant Carroll's attorney in Missouri that no promise was made to defendant Carroll that federal charges would not be brought.  Therefore, we find no basis to conclude that the

United States had adopted the Brown County prosecution or was a party to the plea discussions.  The Missouri plea agreement offers no basis to dismiss this prosecution because this prosecution does not breach the Missouri plea agreement.

Defendant Carroll next argues that the court should employ the doctrine of judicial estoppel to terminate this prosecution. The doctrine relied on by defendant Carroll states that, "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting, Davis v. Wakelee, 156 U.S. 680, 689 (1895)).  That doctrine does not apply to bar this prosecution by the federal government because the federal government did not take a position in the Missouri proceedings and defendant Carroll did not rely upon a promise or position that the federal government would not prosecute him in Kansas.  There is also a broad public interest in enforcing federal drug laws which leans against a finding of estoppel.  Id. at 755.  Therefore, the court rejects defendant Carroll's judicial estoppel argument.

Next, defendant Carroll asserts that this prosecution

10

violates his due process rights.  Defendant cites <u>Tucker v. Makowski</u>, 883 F.2d 877 (10th Cir. 1989) where the court remanded a case upon review of a habeas petition for consideration of whether successive trials on robbery and kidnaping charges arising from the same criminal transaction violated the petitioner's due process or "fundamental fairness" rights.

In this case, although defendant Carroll has been charged in four different jurisdictions, he has not had a trial and in two jurisdictions the charges have been dismissed.  He has pleaded guilty to a conspiracy charge in the State of Missouri, but the instant federal indictment includes charges which allege conduct at a different date than what was alleged in Missouri. So, factually, this case is distinguishable from the <u>Tucker</u> case cited by defendant Carroll.  Moreover, the dual sovereignty doctrine provides a legal basis to distinguish this case from <u>Tucker</u>. See <u>U.S. v. Bafia</u>, 949 F.2d 1465, 1479 (7th Cir. 1991) (that a state and the federal government may prosecute and convict a defendant for essentially the same conduct "is no affront to the Fifth Amendment."); <u>U.S. v. Andersen</u>, 940 F.2d 593, 596 (10th Cir. 1991) ("a defendant may be indicted, prosecuted and convicted in federal court for illegal conduct punishable under a federal statute even after a state court has convicted defendant under a state statute for the same

11

conduct."). Of course, the rationale of the dual sovereignty doctrine also applies to the dual prosecution of defendant Carroll in the State of Kansas and the State of Missouri.

Defendant Carroll asserts that the dual sovereignty doctrine should not be applied in this case because of the federal/state cooperation in bringing the cases in Kansas. We reject this argument. Steven Maxwell was assigned from the State of Kansas Attorney General's Office to assist in the investigation of this case. He rendered assistance through 2003 as an attorney for the State of Kansas. In the Fall of 2003 he made application to be designated as a Special Assistant United States Attorney. This was approved in January 2004. However, Maxwell did not work on the case as a federal prosecutor and took a leave of absence when he was deployed to Iraq in April 2004. After defendant Carroll was sentenced to probation in July 2004, the Brown County prosecutor, Kevin Hill, made arrangements for defendant Carroll to appear in Brown County upon a bench warrant on July 6, 2004. The case was set for trial on September 7, 2004 but was continued on defendant Carroll's motion. According to Hill's affidavit (Exhibit C-411), Hill spoke with Maxwell (back from Iraq) while preparing for trial in October and November 2004. At that time, Maxwell told Hill that federal authorities might be willing to prosecute Carroll in federal

court.  When this was confirmed, Hill moved to dismiss the state charges on December 6, 2004 and federal charges were filed on December 29, 2004.

The court finds no significant federal involvement in the Brown County prosecution.  The investigation leading to the prosecution of the state charges was a state endeavor.  It was not a sham for a federal prosecution.  Conversely, there is no evidence that the State of Kansas coopted the federal decision-making process for bringing this indictment.  The fact that the federal government is working from the state investigation to bring this indictment or that the same attorney has worked on both prosecutions does not defeat the dual sovereignty doctrine or prove double jeopardy.  U.S. v. Trammell, 133 F.3d 1343, 1350 (10th Cir. 1998).  Therefore, the court rejects defendant's attack upon the dual sovereignty doctrine and defendant's claims of double jeopardy.

Defendant Carroll next argues that this case should be dismissed as a vindictive prosecution.  We reject this claim as well.  As the Tenth Circuit stated in Andersen:

> Although a prosecutor obviously cannot base charging decisions on a defendant's race, sex, religion, or exercise of a statutory or constitutional right, see Wayte v. United States, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985), "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge

13

to file . . . generally rests entirely in his
discretion." <u>Bordenkircher v. Hayes</u>, 434 U.S. 357,
364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978)
(footnote omitted).

When the evidence supports prosecution under
different statutes, "[t]he prosecutor may be
influenced by the penalties available upon conviction,
but this fact, standing alone, does not give rise to
a violation of the Equal Protection or Due Process
Clause." <u>United States v. Batchelder</u>, 442 U.S. 114,
125, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979). <u>See
also</u> <u>United States v. Thomas</u>, 884 F.2d 540, 544 (10th
Cir. 1989). . . .

Other courts have rejected due process challenges
similar to that before us now, holding that a
prosecutor's decision to transfer a case from state to
federal court, thereby subjecting the defendant to a
much harsher potential penalty, does not violate the
Constitution. <u>See</u> <u>United States v. Frankel</u>, 739
F.Supp. 629, 630 (D.D.C. 1990); <u>United States v.
Smith</u>, 727 F.Supp. 1023, 1024-25 (W.D.Va. 1990). <u>See
also</u> <u>United States v. Raymer</u>, 941 F.2d 1031, 1042 (10th
Cir. 1991) (without raising presumption of
vindictiveness, state prosecutor may notify defendant
who declines to plea guilty that his case will be
transferred to federal authorities).

940 F.2d at 596.

In this case, contrary to Carroll's contention, the evidence

does not prove that this prosecution was brought because

defendant Carroll exercised his right to enter a plea agreement

in Missouri.  This prosecution was brought because defendant

Carroll received what was perceived to be a light sentence in

Missouri, and the <u>McAdam</u> case may have significantly shortened

the possible sentence from a Kansas state court.  As noted in

the above excerpt from <u>Andersen</u>, federal prosecutors are

entitled to bring charges when there is a substantial federal

interest in the subject matter (as there is in this case) and when federal penalties are considered more appropriate. See also U.S. v. Raymer, 941 F.2d 1031, 1043 (10th Cir. 1991). The circumstances of this case do not support a presumption of vindictive prosecution, nor is there proof of actual vindictiveness. Therefore, the court rejects defendant Carroll's claim of vindictive prosecution.

Finally, defendant Carroll contends that the government has failed to comply with its own policy of deferring to a previous state prosecution of a criminal matter. However, as defendant admits, this policy confers no rights against federal prosecution. Raymer, 941 F.2d at 1037; U.S. v. Thompson, 579 F.2d 1184, 1188-89 (10th Cir.) cert. denied, 439 U.S. 896 (1978). Therefore, it provides no grounds to dismiss this prosecution.

For the above-stated reasons, the court shall deny defendant Carroll's motion to dismiss. The court's decision upon defendant Carroll's due process/double jeopardy and vindictive prosecution arguments is also bolstered by our decision upon defendant Barnhart's motion to dismiss.

Defendant Barnhart's motion to dismiss (Doc. No. 35)

In addition to the factual findings made previously in this order, the court makes the following findings relative to defendant Jeff Barnhart's motion to dismiss.

15

Jeff Barnhart entered an oral plea agreement with the State of Kansas in the case filed in Brown County.  That agreement was that he would plead guilty to one count of conspiracy to manufacture methamphetamine and that he and the State of Kansas would recommend a sentence of 72 months, which at the time of the agreement would be a downward departure under the State guideline sentencing system.  His guilty plea was taken pursuant to that agreement on November 26, 2003.  This was before the McAdam case was decided.

Defendant Barnhart was sentenced on February 27, 2004.  This was after the McAdam case was decided.  Because of the McAdam case, defense counsel requested that defendant be sentenced under the more lenient penalties ordered in the McAdam case.  The State argued that this in effect released the State from the plea agreement because defendant was advocating a sentence less than 72 months.  The court sentenced defendant to 72 months in accordance with the plea agreement.  Defendant appealed this sentence and prevailed.  On July 13, 2004, the Kansas Court of Appeals remanded his case for resentencing pursuant to State v. Barnes, 92 P.3d 578 (2004) which was a case in line with the McAdam decision.

On remand, the State asked that the plea of guilty be set aside.  This request was granted on September 21, 2004 and the

16

case was set for trial.  Rather than have the trial, the State decided to dismiss the case against defendant Barnhart in favor of this prosecution.  This case was filed December 29, 2004. The state case was dismissed without prejudice on January 19, 2005.

Two members of the Barnhart family (Chris Barnhart and Tobey Barnhart) were prosecuted in Kansas state court and received sentences of 120 months and 132 months.  They have not been prosecuted by the federal government.  The three defendants listed in the case at bar were prosecuted at the state level, but did not receive or did not appear likely to receive a lengthy sentence.  Two other persons (Cindy Herrera and Bo Kearns), who were arrested as part of the alleged conspiracy, did not receive significant punishment in state court and are not being prosecuted in this case.  But, Kearns is a juvenile and both persons cooperated with law enforcement agencies investigating and prosecuting this case.

Defendant Jeff Barnhart makes two arguments in favor of dismissal.  First, he argues double jeopardy.  He understands that the United States is bringing the case at bar and that the State of Kansas brought the case in Brown County.  But, he insists that the line between the federal government and the State of Kansas is too diluted to permit the dual sovereignty

17

doctrine to defeat his double jeopardy claim.

The question becomes whether this federal prosecution is a sham for the initial state prosecution. This question is not answered by the fact that the state may have referred this case to the federal government for prosecution. U.S. v. Leathers, 354 F.3d 955, 960 (8th Cir.) cert. denied, 125 S.Ct. 285 (2004) (referrals and cooperation between state and federal officials are "commonplace and welcome."). The issue is whether the state has "'effectively manipulated the actions of the federal government, so that the federal officials retained little or no independent volition.'" Id., quoting U.S. v. 38 Whalers Cove Drive, 954 F.2d 29, 38 (2nd Cir.), cert. denied, 506 U.S. 815 (1992). While this case originated as a state investigation and prosecution, there is no evidence that the volition of the federal government was controlled by the State of Kansas. Steven Maxwell was made a Special Assistant United States Attorney in January 2004. At that time, he could have sought permission to bring federal charges against Jeff Barnhart. He did not, although he may have considered it. See affidavit of Carl Cornwell attached to defendant's motion to dismiss. The matter continued as a state case. Maxwell did not work on this case as a federal prosecution until late 2004 after returning from Iraq and learning that Barnhart's 72-month sentence had

18

been overturned on appeal and that the case was set for trial in Brown County. At that point, the federal government was entitled to determine whether the federal interest in drug crimes enforcement was being properly served. This was not a sham prosecution and the dual sovereignty applies to defeat the claim of double jeopardy. See U.S. v. Padilla, 589 F.2d 481, 484 (10th Cir. 1978) (federal prosecution led by former member of county attorney's office who brought prior state charges arising from same incident is not barred by double jeopardy); see also, U.S. v. Vigil, 743 F.2d 751, 760 (10th Cir.) cert. denied, 469 U.S. 1090 (1984) (double jeopardy does not bar two sovereigns from bringing similar charges).

Defendant Barnhart also contends that this case should be dismissed because it was brought in retaliation against defendant's exercise of his right to appeal his state conviction and therefore is a vindictive prosecution. Defendant has the burden of proving this argument. U.S. v. Carter, 130 F.3d 1432, 1443 (10th Cir. 1997) cert. denied, 523 U.S. 1144 (1998).

> To establish a claim of prosecutorial vindictiveness, "the defendant must prove either (1) actual vindictiveness, or (2) a reasonable likelihood of vindictiveness which then raises a presumption of vindictiveness." If defendant can meet this burden, the prosecution must justify its decision with legitimate, articulable, objective reasons. However, if defendant cannot meet this burden, a reviewing court need not reach the issue of the government's justification.

19

Id., quoting and citing U.S. v. Contreras, 108 F.3d 1255, 1262-3 (10th Cir. 1997)).

Here, we do not believe defendant has satisfied his burden of proving actual or presumptive vindictiveness. The court believes the federal government accepted this case for prosecution not because defendant Barnhart exercised a right of appeal, but because there was a change in Kansas law which reduced the penalties defendant Barnhart would face upon conviction. This does not implicate defendant's right to due process or right against vindictive prosecution. Leathers, 354 F.3d at 962; see also, U.S. v. Kriens, 270 F.3d 597, 602 (8th Cir. 2001) cert. denied, 535 U.S. 1008 (2002) (no presumption of vindictiveness from decision to prosecute federally after defendant refused to plead guilty in state court); U.S. v. Spears, 159 F.3d 1081, 1086-87 (7th Cir. 1998) cert. denied, 528 U.S. 896 (1999) (the fact that a federal prosecution occurred after an unfavorable state court result does not in and of itself demonstrate vindictiveness on the part of the federal prosecutor); U.S. v. Stokes, 124 F.3d 39 (1st Cir. 1997) cert. denied, 522 U.S. 1139 (1998) (government decision to wait to bring charges until it is disappointed by result in a state proceeding does not produce a presumption of vindictiveness); see generally, Raymer, 941 F.2d at 1041 (federal courts have

repeatedly rejected the idea that federal prosecution after state proceedings constitutes vindictive prosecution).

The evidence in this case indicates that there was a plea agreement to resolve the state charges against defendant Barnhart in return for a joint recommendation of a 72-month sentence. The state district court held that the agreement was breached when defendant advocated that a more lenient sentence be imposed in accordance with new Kansas case law and then appealed his sentence on that basis. The federal government decided to prosecute this matter after the potential penalty at the state level was significantly reduced as to defendant Jeff Barnhart. The federal government did not join as defendants in this case those alleged members of the conspiracy who already received lengthy state prison sentences or who cooperated with law enforcement. The government's motivation to secure a severe penalty against persons alleged to have committed methamphetamine offenses does not amount to presumptive or actual vindictive prosecution.

For these reasons, defendant Barnhart's motion to dismiss shall be denied. The court's decision upon defendant Barnhart's motion is also bolstered by our decision upon defendant Carroll's motion to dismiss.

III. DEFENDANT CARROLL'S MOTION TO SUPPRESS (Doc. No. 33)

This motion asserts that defendant Carroll was illegally interrogated without counsel on February 13 and 14, 2003 after he had been arrested, requested appointment of counsel and had counsel appointed.

The court has heard the testimony of Brian Everhart of the Brown County Sheriff's Office and watched a videotape of his interview of Marlon Carroll on February 13, 2003. The sound quality on the videotape is not good. A transcript of the videotape has been admitted as an exhibit and Everhart's narrative report regarding his two interviews has also been admitted. Further, the court has examined a written waiver of rights which defendant Carroll signed on February 13, 2003.

It is undisputed that Carroll was arrested in Doniphan County on February 11, 2003 and was appointed counsel. Everhart attempted to interview Carroll while he was in custody in Doniphan County. Carroll requested counsel and that terminated the interview. By February 13, 2003, Carroll had been taken to the Brown County Jail. Cindy Herrera, a woman arrested with Carroll, communicated to Everhart that Carroll wanted to talk with him. Everhart arranged for Carroll to be brought to an interview room. He made contact with Carroll and asked if Carroll wished to speak with Everhart without his attorney present. Carroll confirmed his desire to talk and stated that

he wasn't bothered by his attorney's absence.  Carroll was then advised of his rights under the Miranda decision, signed a written waiver of those rights, and answered questions from Everhart.

The following day, Everhart was again informed that Carroll wished to speak to him.  Everhart met with Carroll and asked once more whether Carroll desired to talk without his attorney present.  Carroll answered affirmatively.

The Supreme Court has held that "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney."  Minnick v. Mississippi, 498 U.S. 146, 153 (1990).  In Edwards v. Arizona, 451 U.S. 477, 484-85 (1981), the Court stated:

> [A]n accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communications, exchanges, or conversations with the police.

The mere fact that the accused responded to further police-initiated interrogation, even if he has been advised of his rights, is insufficient to constitute a valid waiver.  Edwards, 451 U.S. at 484.  The accused, however, may voluntarily waive his Fifth Amendment rights after invoking the right to counsel if he initiates contact or discussion with authorities.

23

Minnick, 498 U.S. at 156; Edwards, 451 U.S. at 485.

After review of the evidence and testimony in this case, we find that defendant Carroll initiated contact and discussion with Brian Everhart on February 13 and February 14, 2003 and that he waived his Fifth Amendment right not to answer questions or give a statement.  See U.S. v. Obregon, 748 F.2d 1371, 1380-81 (10th Cir. 1984).   Therefore, we shall deny defendant Carroll's motion to suppress.

IV.  CONCLUSION

The motions to dismiss of defendants Jeff Barnhart and Marlon Carroll are denied.  The motion to suppress of defendant Carroll is denied.  The court shall take the motion to sever under advisement pending the government's submission of a proposed redacted statement.  The other pending motions are decided in accordance with the text of this order.

**IT IS SO ORDERED.**

Dated this 5th day of July, 2005 at Topeka, Kansas.


s/Richard D. Rogers
United States District Judge

24